UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CONRAD RICHARD

VERSUS

COMMISSIONER OF SOCIAL SECURITY,
ET AL

CIVIL ACTION

NUMBER 15-244-SDD-EWD

## **NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 31, 2017.

*Erin Wilder-Doomes*

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

CONRAD RICHARD

VERSUS

COMMISSIONER OF SOCIAL SECURITY,
ET AL

CIVIL ACTION

NUMBER 15-244-SDD-EWD

## REPORT AND RECOMMENDATION

Plaintiff,[1] Conrad Richard ("Plaintiff"), brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") waiving recovery by the Social Security Administration ("SSA") of a portion of overpayments made during the period of January 2002 to May 2010.[2] Based on the applicable standard of review under § 405(g) and the analysis which follows, the undersigned recommends that the Commissioner's decision be AFFIRMED.[3]

### I. Procedural History

The overpayments at issue in this appeal arose from supplemental security income ("SSI") benefits paid to Plaintiff while Plaintiff was working and/or receiving unemployment benefits. Plaintiff's appeal challenges the Commissioner's April 10, 2015 partially favorable decision holding that recovery by the SSA of overpayments made to Plaintiff from January 2002 to

---

[1] Plaintiff's requests for appointment of counsel were denied, R. Docs. 23 & 45, and Plaintiff is proceeding herein *pro se*. Because Plaintiff proceeds *pro se*, his filings are "liberally construed." *Cress v. Barnhart*, 51 Fed. Appx. 483, 2002 WL 3139322, at * 1 (5th Cir. 2002) (per curium). Accordingly, the undersigned has considered Plaintiff's multiple filings in support of his appeal.

[2] R. Doc. 1. References to documents filed in this case are designated by "R. Doc. [page numbers]." References to the record of administrative proceedings filed in this case are designated by "AR [page numbers]."

[3] On May 9, 2016, Plaintiff filed a document entitled "Disability Adjudication and Review for Overpayment," R. Doc. 33, which he characterized in his May 10, 2016 Motion to Appoint Counsel as "his memorandum in support of appeal." R. Doc. 35. In keeping with this Court's previous scheduling order, R. Docs. 3 & 45, Defendant filed an Opposition on July 8, 2016. R. Doc. 48. On July 27, 2016, Plaintiff filed additional documents which the court construes as a Reply. R. Doc. 49. Thereafter, on September 13, 2016, Plaintiff filed additional exhibits in Reply. R. Doc. 50. On February 10, 2017, Plaintiff filed a "Notice of Status" and on July 5, 2017, Plaintiff filed additional exhibits. R. Docs. 51 & 52. On July 13, 2017 an Additional Reply was filed. R. Doc. 55.

December 2004 was waived but that recovery by the SSA of overpayments made to Plaintiff from January 2005 to May 2010 was not waived.[4] On April 20, 2015, Plaintiff filed his Complaint.[5] Accordingly, Plaintiff exhausted his administrative remedies before timely filing this action for judicial review and the Appeals Council's decision is the Commissioner's final decision for purposes of judicial review.[6]

## II. Standard of Review

"Judicial review of a final decision of the Secretary under 42 U.S.C. § 405(g)…is limited to determining whether the decision was supported by substantial evidence and whether any errors of law were made." *Bray v. Bowen*, 854 F.2d 685, 686-687 (5th Cir. 1988); *Hughes v. Barnhart*, Civil Action 03-174, 2004 WL 3247622, at * 2 (M.D. La. May 27, 2004) (same). *See also*, *Rini v. Harris*, 615 F.2d 625, 627 (5th Cir. 1980) (explaining that with respect to review of Commissioner's decision to deny waiver of recovery of overpayment, "[o]n appeal our function is limited. We do not reweigh the evidence or substitute our judgment for the Secretary's judgment. Rather we determine whether the record as a whole contains substantial evidence supporting the Secretary's decision."); *Kurtz v. Astrue*, Civil Action H-08-388, 2009 WL 959462, at * 3 (S.D. Tex. March 31, 2009) ("As with all social security cases, judicial review of the Commissioner's

---

[4] AR pp. 7-12. The decision deals with ten distinct overpayment periods: (1) $1,392.19 for the period of January 2002 through May 2002; (2) $4,270.65 for the period of June 2002 through June 2003; (3) $2,492.74 for the period of July 2003 through April 2004; (4) $5,299.18 for the period of September 2004 through July 2005; (5) $1,939.89 for the period of August 2005 through September 2006; (6) $958.26 for the period of April 2007 through September 2007; (7) $450.00 for the period of February 2008 through March 2008; (8) $1,391.00 for the period of July 2008 through November 2008; (9) $184.00 for the period of February 2009 through March 2009; and (10) $1,074.50 for the period of January 2008 through May 2010. *See*, AR p. 166. These ten overpayments total $19,452.41.

[5] R. Doc. 1.

[6] *See*, 20 C.F.R. § 404.981 ("The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision. The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised. You may file an action in a Federal district court within 60 days after the date you receive notice of the Appeals Council's action.").

decision that an overpayment may not be waived is limited to determining whether the decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied to evaluate the evidence.").

"Substantial evidence is evidence that a reasonable mind would accept as adequate to support the decision." *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). *See also*, *Johnson v. Barnhart*, No. SA 05 CA 891, 2006 WL 2329400, at * 3 (W.D. Tex. June 6, 2006) ("Given that this Court cannot reweigh the evidence, try the issue de novo, or substitute its judgment for the Commission, the Court agrees with the Magistrate Judge that the determination is supported by more than a scintilla of evidence and was reached applying the proper legal standards.").

### III. The Commissioner's Decision

On May 11, 2006, Plaintiff completed a Request for Waiver of Overpayment Recovery or Change in Repayment Rate (the "Request for Waiver") requesting that the SSA waive recovery of $5,271.50, representing overpayments made to Plaintiff for the period of September 2004 through July 2005.[7] On August 1, 2006, Plaintiff submitted a second Request for Waiver requesting that the SSA waive recovery of $8,155.58, representing overpayments made to Plaintiff for the period of January 2002 through April 2004.[8] On September 26, 2006, the SSA decided not to waive collection of these amounts.[9] Plaintiff filed multiple requests for reconsideration,[10] and on March 22, 2011, the SSA determined that it would not waive collection of Plaintiff's overpayment in the amount of $15,394.65.[11]

---

[7] AR pp. 36-43.

[8] AR pp. 46-53.

[9] AR pp. 59-61 & 63-65.

[10] *See*, AR pp. 114 (January 19, 2007 request for reconsideration); AR p. 115 (January 23, 2007 request for reconsideration); AR p. 128 (March 9, 2007 request for reconsideration).

[11] AR pp. 176-178. The $15,394.65 amount includes Plaintiff's request for waiver of $5,271.50 in overpayments made September 2004 through July 2005, $8,155.58 in overpayments made January 2002 through April 2004, and

4

On March 25, 2011, Plaintiff filed a Request for Hearing by Administrative Law Judge ("ALJ")[12] as well as a form indicating that he had appointed Gerald Issokson, an attorney, as his representative.[13] On August 22, 2011 a hearing was held before an ALJ, and Plaintiff, represented by counsel, testified.[14] At the beginning of the hearing, the ALJ outlined the ten periods of overpayment at issue,[15] and Plaintiff's counsel explained that Plaintiff's contention was either that Plaintiff informed the SSA that he was working or, in those instances in which Plaintiff did not inform the SSA, someone "closely involved with Mr. Richard" should have known that he was working.[16] Plaintiff testified that he worked at Doc's Laundry and Linen and Sutton's Dry Cleaner's[17] and that he reported all of his employment to the SSA.[18]

---

$1,939.89 in overpayments made August 2005 through September 2006. *See*, AR p. 166. It appears that additional periods of overpayment were subsequently added to the Commissioner's consideration. As discussed below, the ALJ's September 14, 2011 decision addresses all ten overpayment periods from January 1, 2002 to May 1, 2010. AR p. 230.

[12] AR pp. 179-180.

[13] AR p. 27.

[14] AR pp. 423-444.

[15] AR p. 427.

[16] AR p. 428. The following exchange took place:

> ALJ: I mean what exactly is – what exactly is your contention? Is it your contention that he wasn't paid the wages, or that he informed them about them, or –
>
> ATTY: well to some extent, that yes he did inform them, or in the event that in the – on those occasions when he didn't inform them, I think there were persons closely involved with Mr. Richard, who should have known that he was working –

*See also*, AR p. 429 ("I think, that he reported, or I think there were persons working with Mr. Richard either at…Harmony House, which was the halfway house he stayed at for a long time or vocational – social worker at mental health clinic that should have been assisting him in making sure that these things were reported…if they hadn't been.").

[17] AR pp. 432-433.

[18] AR p. 434. Near the end of the hearing, Plaintiff stated that what was "confusing" him was how he owed SSA money when he wasn't receiving the "full amount of checks." AR p. 442. Plaintiff's counsel did not question Plaintiff regarding any of the amounts received, or otherwise develop the record regarding whether the amounts received by Plaintiff or deducted by SSA were correct. Based on the administrative record, it appears that SSA was deducting amounts from Plaintiff's monthly SSI payments in an effort to recoup overpayments.

On September 14, 2011, the ALJ issued an unfavorable decision.[19] Therein, the ALJ found that Plaintiff was overpaid benefits in the amount of $15,394.65 during the period of January 1, 2002 to May 1, 2010, and that Plaintiff was at fault in causing the overpayment.[20] With respect to Plaintiff's fault, the ALJ explained that "claimant did not deny that he was working. The claimant reported that he let the agency know when he was working at different jobs. However, the evidence in the file does not support his allegations."[21] The ALJ reasoned that Plaintiff was aware that he had an obligation to report changes in his income and had a history of either not reporting or not timely reporting his income.[22] Because the ALJ found that Plaintiff was at fault for causing the overpayment, the ALJ denied Plaintiff's waiver request and found that Plaintiff was "liable for repayment of $15,394.65…."[23]

On June 5, 2013, the Appeals Council vacated the ALJ's September 14, 2011 decision and remanded for further proceedings.[24] With respect to the amount of overpayment, the Appeals Council noted that the $15,394.65 amount "actually consisted of several smaller overpayments covering the period of January 2002 through April 2004 and September 2004 through September 2006….If the period through May 2010 is considered, the amount of overpayment is significantly higher."[25] Regarding the question of waiver, the Appeals Council explained that waiver "is only appropriate when a person is without fault (20 CFR 416.552) and recovery would be against equity

---

[19] AR pp. 227-233.

[20] AR p. 232. Contrary to what is indicated by the September 14, 2011 decision, the $15,394.65 amount was the sum of only the first six periods of overpayment (*i.e.*, January 2002 through September 2006).

[21] AR p. 232. The ALJ noted that in the "overpayment summary," Plaintiff was characterized as "'notorious' for not reporting his work activity and not keeping paystubs." AR p. 232 (citing AR p. 214).

[22] AR p. 232.

[23] AR p. 232.

[24] AR pp. 303-307.

[25] AR p. 305.

and good conscience (20 CFR 416.554) or defeat the purpose of Title XVI of the Social Security Act (20 CFR 416.553) or impede the administration of the supplemental security income program (20 CFR 416.555)."[26] With respect to Plaintiff's fault, the Appeals Council explained that "without fault" "means that the evidence shows that the person, to the best of his ability, made all necessary reports and took all reasonable actions to prevent the overpayment."[27] While Plaintiff may not have timely reported his earnings, the Appeals Council noted that the September 14, 2011 decision "did not adequately evaluate the limiting nature of the claimant's impairments."[28] Specifically, the Appeals Council noted that "due to the nature of the claimant's impairments (schizophrenia, bipolar disorder, borderline intellectual functioning, etc.), the decision should have assessed the claimant's ability to understand and act upon his obligations towards the Agency."[29] Accordingly, the case was remanded for the ALJ to: (1) "make findings and issue a decision regarding the period for which the claimant received the overpayment in supplemental security income, the cause of the overpayment, and the amount of the overpayment;" and (2) "decide whether the claimant was without fault in causing or accepting the overpayment and whether recovery of the overpayment may be waived."[30]

---

[26] AR p. 306.

[27] AR p. 306.

[28] AR p. 306. A review of the administrative record indicates that on May 18, 1990, Mr. Richard was found not guilty by reason of insanity and placed on probation relative to a 1988 Aggravated Arson charge. Thereafter, he apparently was deemed incompetent to proceed with a probation revocation hearing on December 11, 1998. AR p. 87. Plaintiff testified that he was admitted to the Louisiana State Mental Health Systems Hospital in 1998, then sent to "Jackson Institution" and released in 2000. AR p. 430. He testified that he was subsequently released to reside in a halfway house and started working at a laundry. AR p. 431.

[29] AR p. 306.

[30] AR p. 306.

Following remand, a second hearing before an ALJ took place on January 16, 2014.[31] Unlike the previous hearing, Plaintiff appeared without representation.[32] During the January 16, 2014 hearing, Plaintiff testified that he became aware of reporting requirements regarding his earnings and employment in 2004.[33] Plaintiff further testified that he worked for a laundry and the Mall of Louisiana.[34] He asserted that he reported work "several times,"[35] and that he started paying his own bills when he "moved in the supervised apartments, 2005."[36]

On January 30, 2014, the ALJ issued a partially favorable decision.[37] The ALJ determined that Plaintiff was "overpaid benefits in the amount of $19,452.41 during the period [of] January 1, 2002 to May 1, 2010" because the Plaintiff "earned income and also received unemployment benefits while receiving supplemental security income benefits…."[38] Additionally, the ALJ found that Plaintiff was partially at fault in causing the overpayment.[39] With respect to the Plaintiff's fault, the ALJ explained that despite Plaintiff's allegations that he reported when he was working, the record did not support that claim. The ALJ noted that numerous notices included in the record

---

[31] AR pp. 445-463.

[32] The administrative record includes a Waiver of Representation signed by the Claimant and dated January 16, 2014. AR p. 360. Therein, Plaintiff voluntarily waived his right to representation at the January 16, 2014 hearing and requested to proceed without a representative.

[33] AR p. 448 (In response to the question "are you aware of reporting requirements with regards to earnings and employment," Plaintiff responded "I became aware in 2004. But before I was not aware of it because I barely worked at – worked at, you know, the kind of stuff receiving SSI from 1982, when I got it in '84. I got incarcerated in 1989 and to 1990. And then I've been – got put on probation. I was for about a year after that. And I became aware about that when I came out here in Baton Rouge. I thought that the institution would put me to work. And they told me about overpayment then. It was about 2004. But I wasn't aware of any procedures from there."). In response to the ALJ's follow up question, "You were reporting requirements with you say in 2004 – you weren't aware of them in 2003," Plaintiff stated "No, I wasn't." AR pp. 448-449. *See also*, AR p. 459 ("I reported it to them several times, when they made me aware of it in 2004."); *Id*. ("But they made me aware of the check stubs in 2004.").

[34] AR p. 449. *See also*, AR p. 457-458 (Plaintiff describing job with laundry).

[35] AR p. 453.

[36] AR p. 458.

[37] AR pp. 17-25.

[38] AR p. 22.

[39] AR pp. 23-25.

8

reminded Plaintiff of his responsibility to report changes in income, and explained that during the hearing Plaintiff

> acknowledged that the periods of work activity documented in the record are accurately reported, but he feels that he adequately advised SSA of his work activity and therefore should not be held liable for overpaid amounts. He stated that he did not really understand the need to report employment or wages earned until after 2004, when he left the forensic facility he was in and went to the halfway house or homeless shelter.[40]

The ALJ further pointed out that Plaintiff testified that since 2005 he managed his own money and paid his own bills, and that Plaintiff did not have a representative payee.[41] Based on Plaintiff's testimony at the January 16, 2014 hearing, the ALJ found that Plaintiff "failed to carry his burden of proving that he was without fault in causing the overpayment."[42] However, the ALJ went on to consider Plaintiff's history of mental illness, and Plaintiff's testimony that he was not aware of reporting requirements until 2004. The ALJ explained that

> the mere presence of mental illness does not imply an inherent inability to understand his reporting obligations under the Act. The above facts, including the absence of a representative payee, his testimony regarding the handling of money, and his ongoing work activity at a variety of different employers, leads me to believe that for the period of time beginning in 2005 he has adequately understood his responsibilities under the Act, and I am not inclined to waive the portion of the overpayment attributable to the period of time from that point forward.[43]

With respect to the period prior to 2005, the ALJ noted that Plaintiff was "making the transition from his forensic incarceration to assisted living" and that "[g]iving [Plaintiff] the benefit of the

---

[40] AR p. 23.

[41] AR p. 23 (citing AR p. 133 indicating Plaintiff did not have a representative payee or an authorized representative).

[42] AR p. 24. The ALJ explained that the burden of proving he was without fault rested on Plaintiff, and that Plaintiff "produced nothing in the way of witness or documentary proof" to show that he properly reported to the SSA. AR p. 23. The ALJ explained that "[u]nder the circumstances his sworn testimony, presented as the only evidence in his favor, is *prima facie* self-serving." AR pp. 23-24.

[43] AR p. 24.

9

doubt…comports with the spirit of the Act."[44] Accordingly, the ALJ held that overpayments which occurred prior to 2005 totaling $8,662.83 were waived, but that "for the period beginning January 1, 2005 and onward, recovery is not waived and the claimant is liable for reimbursement…."[45]

On February 5, 2015, the Appeals Council granted Plaintiff's request for review of the ALJ's January 30, 2014 decision,[46] and, on April 10, 2015, the Appeals Council issued a partially favorable decision.[47] In its decision, the Appeals Council adopted the ALJ's findings "with respect to the period and amount of overpayment as well as the claimant's fault in causing or accepting the overpayment."[48] However, the Appeals Council did not adopt the ALJ's analysis regarding waiver, noting that the ALJ "failed to consider criteria beyond 'fault' in reaching her conclusions."[49] While the Appeals Council agreed with the ALJ that Plaintiff was without fault in causing or accepting the overpayment that occurred prior to 2005, the Appeals Council explained that "'without fault' is only a threshold that must be met before considering the remaining criteria for determining whether recovery of an overpayment is subject to waiver."[50] The Appeals Council explained that waiver is only appropriate when a person is without fault *and* "one of the following is true: [r]ecovery would be against equity and good conscience…; [r]ecovery would defeat the purpose of Title XVI of the Social Security Act…; or [r]ecovery would impede the administration

---

[44] AR p. 24. ("After all, the Social Security Act and the regulations thereto are to be given a liberal interpretation in favor of coverage and to avoid denying benefits to persons whom the statue was designed to protect.").

[45] AR p. 25.

[46] AR pp. 13-16.

[47] AR pp. 7-11.

[48] AR p. 10.

[49] AR p. 10.

[50] AR p. 11.

10

of the supplemental security income program…"[51] The Appeals Council then concluded that "[b]ased on the claimant's current eligibility for supplemental security income, recovery of overpayment that occurred prior to 2005 is deemed to defeat the purpose of the Act. Therefore, recovery of the overpayment that occurred during the period of January 2002 through December 2004 is subject to waiver."[52]

### IV. Waiver of Recovery of Overpayment

Plaintiff's Complaint asserts a claim for "Title XVI Overpayment Waiver of Recovery of Overpayment."[53] The court construes Plaintiff's appeal as a challenge to the Commissioner's determination that recovery of only a portion of the overpayments occurring from January 2005 through May 2010 would be waived because Plaintiff was not without fault in causing or accepting overpayments from January 2005 to May 2010.[54]

---

[51] AR p. 11.

[52] AR p. 11.

[53] R. Doc. 1, ¶ 2. In his January 19, 2007 request for reconsideration, Plaintiff asserted it "is unfair for paying about $55,000 thousand for five years for my food, phone bills, clothing, housing, medical Reason I can not [sic] afford to pay now and ask forgiveness of debt…" AR p. 114. *See also*, AR pp. 112-113 (November 30, 2004 correspondence to Senator David Vitter explaining "I file a waiver because I can [sic] afford to pay rent, telephone bill, food, cloths."); AR p 58 ("I understand how my overpayments happen during the period 9/2004 through 7/2005 and 10/2005 through 01/2006. It was because of my earned income received from work."). Plaintiff's Memorandum in Support of Appeal seems to focus on Plaintiff's assertion that the SSA knew of Plaintiff's work. R. Doc. 33 (wherein Plaintiff sets out his employment history and asserts "…Social Security charge me for I got unemployment til [sic] 2010 and they know look at bank statements for what show money amounts and my social security award was cut and still not right…."). *See also*, R. Doc. 49 (Plaintiff's Reply setting out list of exhibits purporting to show that Plaintiff reported work activity and unemployment benefits).

[54] To the extent Plaintiff asserts that the SSA's calculations regarding his other income and/or the amount of overpayment due is incorrect, Plaintiff has presented no evidence to explain or support such a claim. *See*, AR p. 378 (Plaintiff's handwritten contentions asserting, without more, that "[t]he claimant overpayment amounts is incorrect cumulative."). Even where a plaintiff proceeds *pro se*, as Plaintiff does here, he must set forth the basis for his appeal. Without any additional explanation or evidence, there is no basis for remanding this matter based on Plaintiff's possible, undeveloped argument related to the amounts of overpayment. *See*, *Danna v. Astrue*, Civil Action No. 11-0139, 2012 WL 1118606, at * 5 (E.D. La. March 8, 2012) (finding substantial evidence supported ALJ's determination that the amount of overpayment was $109,894.60 where plaintiff presented no evidence supporting his argument that the amount of overpayment was only $61,650.00). *Sanders v. Barnhart*, 105 Fed. Appx. 535, 536 (5th Cir. 2004) ("Sanders asserts that the Administrative Law Judge was biased and that the district court denied him a fair trial. Sanders does not provide facts to support these assertions. Although we apply less stringent standards to parties proceeding pro se than to parties represented by counsel and liberally construe the briefs of pro se litigants, pro se litigants must still brief the issues and reasonably comply with the requirements of Fed. R. App. P. 28.").

"Waiver of recovery of an overpayment is granted only where an individual is 'without fault' in causing the overpayment and where recovery of the overpayment would defeat the purpose of the Act or be against equity or good conscience." *Bray*, 854 F.2d at 687; *Hughes*, 2004 WL 3247622, at * 2 (same). *See also*, 42 U.S.C. § 404(b)(1) ("In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience."). "The burden of proof that he was without fault rests on the claimant." *Bray*, 854 F.2d at 687; *Rini*, 615 F.2d at 627 ("We have observed that the plaintiff in a case such as this bears a heavy burden.").

"Fault, for purposes of recoupment of an overpayment of disability insurance benefits, applies only to the individual." *Seawood v. Astrue*, Civil Action No. 10-962, 2011 WL 4459739, at * 5 (N.D. Tex. Aug. 31, 2011) (citing *Cress v. Barnhart*, 51 Fed. Appx. 483, 2002 WL 3139322 (5th Cir. Sept. 30, 2002) (per curiam)). "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault." 20 C.F.R. § 404.507. *See also*, *Bray*, 854 F.2d at 687 ("the Secretary's shared fault does not relieve a claimant of liability for overpayments for which she was initially at fault.").

"In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." *Id*. Fault will be found if the incorrect payment resulted from: "(a) An incorrect statement made by the individual which he knew or should have known to

12

be incorrect; or (b) Failure to furnish information which he knew or should have known to be material; or (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect." *Id*. Where it is shown that Plaintiff knew or should have known about reporting requirements, the plaintiff will be found to not be without fault. *See*, *Bray*, 854 F.2d at 987 (substantial evidence supported determination that claimant was not without fault where she was informed "both when she filed for benefits and through periodic check 'stuffers' that she would lose her entitlement to benefits if she got married."); *Creamer v. Shalala*, 5 F.3d 1495, 1993 WL 391467 at * 2 (5th Cir. Sept. 23, 1993) (per curium) (claimant's previous termination of social security benefits based on work activity should have put claimant on notice that her work activity would affect her right to receive benefits); *Kurtz*, 2009 WL 959462, at * 6 (finding "substantial evidence supports the ALJ's finding that Kurtz was not 'without fault.' In fact, the SSA's multiple notifications demonstrate that Kurtz knew or should have known that her work activity could affect her eligibility to continue receiving disability benefits."). Here, as noted above, documents included in the administrative record indicate Plaintiff has a history of mental illness.[55] Based on Plaintiff's own testimony, Plaintiff was working following his release from the state mental hospital, and became aware of obligation to report his wages in 2004.[56] Plaintiff further testified that he started paying his bills when he moved into supervised apartments in 2005, and the administrative record supports the ALJ's determination that Plaintiff does not have a representative payee.[57] Plaintiff's own testimony that he became aware of reporting requirements in 2004 provides substantial evidence supporting the Commissioner's final decision that Plaintiff was without fault in accepting or causing

---

[55] *See*, *supra*, n. 28.

[56] AR pp. pp. 448-449 & 459.

[57] AR pp. 458 & 133.

13

overpayments from January 2002 through December 2004, but was not without fault in accepting or causing overpayments from January 2005 to May 2010.

While Plaintiff appears to contend that he did inform the SSA that he was working or otherwise receiving alternative benefits, there is nothing in the administrative record to support his claim. *See*, *Kurtz*, 2009 WL 959462, at * 5 ("As a threshold matter, Kurtz argues that she was without fault because she kept the SSA duly informed about her work activity. Kurtz also asserts that the SSA never contacted her about her earnings. The record, however, belies Kurtz's assertion, as the record indicates that only once did Kurtz actively (as opposed to passively returning earnings forms) contacted [sic] the SSA about her work activity."); *Seawood*, 2011 WL 4459739, at * 6 (affirming Appeals Council's determination that plaintiff was not without fault in accepting overpayment where Appeals Council "based its decision on the fact that, apart from Seawood's own testimony, there was no credible evidence in the record that Seawood reported any changes in her workers' compensation benefits to the SSA until such information was requested in 2001.").

Moreover, the question of "fault" as used in "without fault" only applies to the individual, and the shared "fault" of the SSA does not dictate whether the claimant is also at fault. *See*, 20 C.F.R. § 404.507; *Bray*, 854 F.2d at 687; *Seawood*, 2011 WL 4459739, at * 5. For example, in *Bray*, a claimant receiving surviving child's insurance benefits was informed at the time of her application for benefits as well as through periodic mailings that a change in her marital status would result in a loss of eligibility. 854 F.2d at 688. Despite "being fully advised that marriage terminated her benefits," claimant "continued to cash checks to which she was not entitled." *Id*. at 687. Although claimant argued she was without fault "because she informed the SSA of the change in her marital status," the court explained that "the Secretary's shared fault does not relieve

14

a claimant of liability for overpayments for which she was initially at fault." *Id*. Similarly, in *Cress v. Barnhart*, No. 01-131, 2001 WL 1658067 (N.D. Tex. Dec. 26, 2001), *affirmed*, 51 Fed. Appx. 483, 2002 WL 31319322 (5th Cir. Sept. 30, 2002) (per curiam), the court affirmed the Commissioner's determination that claimant was liable for overpayments of disability benefits despite claimant's argument that he was not at fault for accepting overpayments because he had notified the SSA about his workers' compensation settlement and had actually attempted to tender his workers' compensation settlement check to an employee in the social security office. *Id*. at * 2. When the social security employee told claimant he could not accept such a large sum, claimant used the money to buy a house and car, and pay other bills, and "continued to accept full benefits for months when he should have expected reduced disability payments." *Id*. *See also*, *Johnson v. Barnhart*, No. SA 05 CA 891 FB, 2006 WL 2329400, at * 3 (W.D. Tex. June 6, 2006) (finding substantial evidence supported Commissioner's decision that plaintiff was not without fault in accepting old-age insurance benefits and that plaintiff was not entitled to a waiver of recovery of overpayments where, despite the numerous errors committed by the SSA and the fact that plaintiff reported that he would be receiving a pension, plaintiff was "not entirely without blame" because he was aware that receipt of pension payments would affect his social security retirement benefits but "did not inquire as to why the payments had not decreased."). Accordingly, even assuming that Plaintiff's unsupported contention that he reported earnings to the SSA is correct (such that the SSA was arguably at fault for the overpayments), the shared fault of the SSA does not relieve Plaintiff of liability for overpayments for which he was also at fault. *See*, *Bray*, 854 F.2d at 687.[58]

---

[58] Because substantial evidence supports the ALJ's determination that Plaintiff was not without fault in accepting or receiving overpayments from January 2005 to May 2010, the only overpayments remaining at issue for the second part of the waiver analysis (*i.e.*, whether recovery of overpayments would defeat the purpose of the Social Security Act) are those made from January 2002 to December 2004. *See*, *Danna v. Astrue*, Civil Action No. 11-0139, 2012 WL 1118606, at * 5 (E.D. La. March 8, 2012) ("Under Section 404 the issue of whether a recovery would be against equity and good conscience is only considered where the claimant is without fault."). In its April 10, 2015 decision, the Appeals Council explained that "[w]hen an overpaid individual is eligible for supplemental security income

## V. Conclusion

The analysis above demonstrates that Plaintiff's claims of reversible error are without merit. The record considered as a whole supports the finding that the Commissioner applied the proper legal standards and substantial evidence supports the determination that the overpayments made to Plaintiff from January 1, 2002 to May 1, 2010 should be partially waived.

## **RECOMMENDATION**

It is the recommendation of the magistrate judge that under sentence four of 42 U.S.C. § 405(g), the final decision of the Commissioner of Social Security, granting a partial waiver of overpayments made to Plaintiff from January 1, 2002 to May 1, 2010 by affirmed and this action be dismissed.

Signed in Baton Rouge, Louisiana, on July 31, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

payments, the Administration will find that recovery is deemed to defeat the purpose of the Act in continuing eligibility cases if the individual's current total income does not exceed…[t]he Federal Benefit Rate (FBR); plus [t]he $20 general income exclusion; plus [t]he $65 earned income exclusion; plus [t]he federally administered State supplemental level." AR p. 11. The Appeals Council found that "[b]ased on the claimant's current eligibility for supplemental social security income, recovery of overpayment that occurred prior to 2005 is deemed to defeat the purpose of the Act." AR p. 11. Nothing in Plaintiff's multiple submissions indicates that he is appealing this aspect of the Commissioner's final decision, which was favorable to Plaintiff.